UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
DENISE M. LYMAN,                      :
                                      :
                Plaintiff,            :
                                      :
        -v.-                          :  ECF CASE
                                      :
THE NEW YORK AND PRESBYTERIAN         :  Case No. 11 Civ. 3889 (AJN) (JCF)
HOSPITAL, MARIA LAPORTA, and WALDNER'S :
BUSINESS ENVIRONMENTS, INC.,          :
                                      :
                Defendants.           :
                                      :
------------------------------------- x

# DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN THE CASE

EPSTEIN BECKER & GREEN, P.C.
James S. Frank
Brian G. Cesaratto
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
Attorneys for Defendants
*The New York and Presbyterian Hospital
and Maria LaPorta*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

INTRODUCTION ...........................................................................................................................1

FACTS .............................................................................................................................................3

ARGUMENT ...................................................................................................................................7

**POINT I - PLAINTIFF IS BOUND BY THE MAY 24, 2012 AGREEMENT** .........................7

    A.    Because Plaintiff And Defendants Made A Deliberate Decision To Settle, Plaintiff Should Not Be Relieved Of Her Settlement. ...................................7

    B.    The Parties Reached A Binding Agreement On All Material Terms Before The Magistrate, Which Remains Unaffected By Subsequent Disagreements Over New Terms Sought By Plaintiff Directed To Avoid Her Tax Liabilities. ............................................................................................8

    C.    The Settlement Is Enforceable As There Is No Evidence That Plaintiff Reserved Any Right Not To Be Bound Absent Written Agreement .........11

    D.    The Parties Partially Performed Under The Settlement By Approving the Magistrate's Notification To The District Court And Exchanging Drafts. ...................................................................................................................13

    E.    The OWBA Revocation Period In The Written Agreement Does Not Obviate The Settlement. ...................................................................................13

CONCLUSION ..............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ackermann v. United States*, 340 U.S. 193 (1950) .................................................................... 7

*Andrulonis v. United States*, 26 F.3d 1224 (2d Cir. 1994) ......................................................... 8

*Ciaramella v. Readers Digest Ass'n*, 131 F.2d 320 (2d Cir. 1997) .......................................... 11

*Eswarappa v. SHED Inc./KID's CLUB*, 685 F. Supp. 2d (D. Ma. 2010) ................................. 13

*Figueroa v. City of New York*, 2011 WL 309061 05 Civ. 9594 (S.D.N.Y. Feb. 1, 2011), aff'd, 475 Fed.Appx. 365 (2d. Cir. 2012) ................................................................................... 9

*Jackson v. NYC Dept. of Ed.*, 2012 WL 1986593 (S.D.N.Y. 2012) ............................... 1, 12, 13

*Kozlowski v. Coughlin*, 871 F.2d 241 (2d Cir. 1989) ................................................................. 8

*Lee v. Hospital for Special Surgery*, 2009 WL 2447700 (S.D.N.Y. 2009) ............................ 1, 9

*Lynch, Inc. v. Samatamason, Inc.*, 279 F. 3d 487 (7th Cir. 2002) .............................................. 9

*Mia v. Potter*, 282 Fed.Appx. 478 (7th Cir. 2008) ................................................................... 11

*Monaghan v. SZS 33 Assoc.*, 73 F. 2d 1276 (1996) .................................................................... 9

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir.1986) .......................................................................... 7

*Powell v. Omnicom, BBDO/PHD*, 497 F. 3d 124 (2d Cir. 2007) ............................... 1, 7, 8, 9, 12

*Tujetsch v. Bradley Dental, LLC*, 2010 WL 5099981 (N.D. Ill. Dec. 8, 2010) ....................... 11

*Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50 (S.D.N.Y. 1986) ......................................... 7

*Wells v. Comm'r*, T.C. Memo. 2010-5, 2010 WL 23333 (January 5, 2010) .............................. 3

*Williamson v. Delsener*, 59 A.D.3d 291 (1st Dept. 2009) ......................................................... 9

*Winston v. Mediafare Entertainment Corp.*, 777 F. 2d 78 (2d Cir. 1985) .......................... 11, 12

**STATUTES**

CPLR §2104 ................................................................................................................................ 9

*IRC § 104(a)(2)* .......................................................................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 60(b) ................................................................................................................... 7

**PRELIMINARY STATEMENT**

Defendants The New York and Presbyterian Hospital ("the Hospital" or "NYPH")) and Maria LaPorta ("LaPorta") oppose Plaintiff Denise Lyman's motion to reopen this action after this Court dismissed the action following a May 24, 2012 settlement conference whereat all parties agreed that "this case has been settled" (DE #31), and request attorneys' fees and costs.

**INTRODUCTION**

Plaintiff and Defendants voluntarily settled this matter before the Magistrate Judge at the May 24, 2012 settlement conference. All parties, with their respective counsel present, reached agreement on the terms, including the monetary amount, of their settlement and that it was to be memorialized in a subsequent document. Accordingly, on May 30, 2012, the Court entered an Order ("Order") dismissing the case since it "***has been settled.***" Following entry of the Order, Plaintiff switched lawyers. Now Plaintiff seeks to renege on the settlement agreement. Defendants respectfully submit that the Court should reject Plaintiff's attempt to escape the consequences of the bargain she made before the Magistrate Judge to preserve the integrity of the Court's mediation program. Similar after-the-fact efforts to vitiate settlements have been rejected in this Circuit.[1] In addition, Plaintiff's new counsel's assertion that no agreement was reached is not supported by any evidence. Indeed, Plaintiff's own submission reveals that an agreement was reached. Accordingly, Plaintiff's tactical effort to embark on a new reconsidered case strategy of active litigation by new counsel must be rejected.

Counsel's affirmation should be summarily rejected because it is not based on personal knowledge and since it is wholly inconsistent with Plaintiff's failure to advise the Court for

---

[1] *See Powell v. Omnicom, BBDO/PHD*, 497 F. 3d 124 (2d Cir. 2007); *Lee v. Hospital for Special Surgery*, 2009 WL 2447700, 09 Civ. 1117 (S.D.N.Y. Aug. 11, 2009); *Jackson v. NYC Dept. of Ed.*, 2012 WL 1986593 (S.D.N.Y. June 4, 2012).

1

months after entry of the Order that she had not (in fact) agreed to settle the action. Plaintiff's lengthy acquiescence belies her present contention, and, instead, supports the inescapable conclusion that (as the Order entered in the record then reflected) she did in fact agree to a settlement at the conference, and impermissibly now seeks an after-the-fact escape from that agreement because she has changed her mind, after retaining new counsel.

The evidence of Plaintiff's agreement to settle this litigation is in the very exhibits submitted with the motion. The email correspondence irrefutably demonstrates in Ms. Lyman's own words, and in the words of her counsel, ***that she agreed to settle this matter***.[2] Plaintiff's exchange of emails constitutes determinative documentary proof that Plaintiff agreed to the settlement and then reconsidered months later. Since Plaintiff has attached the emails exchanged with prior counsel in support of her motion, she cannot avoid the consequences of those plain and unambiguous written communications. They confirm that an agreement had been reached: *e.g.*, as Plaintiff's own counsel who attended the conference with her, stated in an email, "***you agreed to accept $59,500 in settlement of your claims in Court, in front of Magistrate Judge Francis.***"

As revealed in the emails, only following the settlement, Plaintiff ***for the first time*** proposed new terms seeking to avoid paying taxes that are due on the settlement amount. Plaintiff embarked on a strategy to repudiate her earlier agreement despite having never been treated by any physician or health professional for her purported emotional distress, or having

---

[2] Plaintiff has not submitted an affidavit on her own behalf, but instead relies on her new counsel's affirmation, even though he was not involved in any of the settlement negotiations, did not attend the conference and lacks any first-hand knowledge of those proceedings. Since his assertion that no deal to settle was struck before the Magistrate (*i.e.*, that there was only an agreement in principle subject to final approval by Plaintiff) is directly contradicted by the record evidence, including the Order and Plaintiff's/counsel's emails, his affirmation should be disregarded.

suffered any physical injury. *See IRC § 104(a)(2); Wells v. Comm'r,* T.C. Memo. 2010-5, 2010 WL 23333 (January 5, 2010) (non-taxability requires proof of "personal physical injury or physical sickness."). While no new agreement was reached concerning her post-settlement efforts to gain potentially unlawful tax treatment, that fact does not change the fact of the earlier settlement agreement.

Even after the Hospital agreed to what Plaintiff's counsel referred to as Plaintiff's "***new demand***" to issue a Form 1099 reporting the payment but without any tax withholding, Plaintiff refused to sign the written agreement.[3] Since the written agreement tendered to Plaintiff conforms to the settlement, Plaintiff remains bound, irrespective of the lack of agreement over the newly demanded terms, by her original agreement. Defendants respectfully submit that Plaintiff cannot demand that Defendants agree to untrue statements; *e.g.*, her emotional distress injuries to afford tax treatment as a condition of executing the formal settlement agreement. As the cases emphasize, the proper tax treatment is for the IRS to determine, not the parties. Disagreement over such terms cannot be properly used to escape one's voluntary undertaking to settle a litigation.

## FACTS

On May 9, 2012, Plaintiff requested a second mediation session before Magistrate Judge Francis to resolve the matter. (Certification of Brian G. Cesaratto ("Cesaratto Cert."), ¶ 2; Exh.

---

[3] The Hospital was unwilling to accede to Plaintiff's post-settlement request to characterize the settlement amount as attributable to emotional distress injury since there was no factual basis for such a characterization in the record evidence. This extraordinary demand was never discussed with the Magistrate Judge, and the Hospital was unwilling to facilitate a misclassification of the facts. Since Plaintiff's counsel was providing the tax advice, the Hospital requested indemnification from both Plaintiff and former counsel should any future tax issues arise since the payment was to be made to counsel as attorneys for Plaintiff with Form 1099s issued to both former counsel and Plaintiff.

3

1).[4] On May 24, 2012, a settlement conference was held before Magistrate Judge Francis, at which Plaintiff, LaPorta and The Hospital attended, along with respective counsel. DE May 24, 2012; (Cesaratto Cert. ¶ 3).

At that time, the matter was settled for $59,500 before the Magistrate Judge. ("Cesaratto Cert."), ¶ 4). The parties further agreed to the following material terms: (1) a neutral reference by the Hospital pursuant to its established policy (*i.e.*, to confirm last title held and dates of employment); (2) the individual parties (Plaintiff and LaPorta) will not disparage one another; (3) confidentiality; (4) if asked about their litigation, the parties will state only that they "have amicably resolved their differences"; (5) general release of claims by Plaintiff; and (6) Plaintiff would not reapply for employment to the Hospital. (Cesaratto Cert. ¶ 5).

The parties agreed to enter into a written agreement memorializing their settlement, and Magistrate Judge Francis stated that he would advise the District Court Judge the matter had been settled. (Cesaratto Cert. ¶ 6).

On May 30, 2012, an Order of dismissal was entered by the District Court providing:

> "***It having been reported to this Court that this case has been settled***, it is hereby ORDERED that the above-captioned action is discontinued without costs to any party and without prejudice to restoring the action to this Court's calendar if the application to restore the action is made within thirty days."

DE#31 (emphasis added). Plaintiff's counsel wrote to the Court on June 21, July 10, July 31 and August 29, 2012, requesting extensions of the restoration date to complete the written agreement,

---

[4] The first mediation session was held on November 29, 2011 before the Magistrate Judge with all parties present. DE November 29, 2011. Plaintiff subsequently settled her claims with Defendant Waldner's Business Environment, and then requested a second mediation before the Magistrate with The Hospital and LaPorta. Plaintiff advised the Court that "We believe that intervention by Your Honor at this stage *would be helpful in achieving resolution with respect to the remaining defendants*." (Cesaratto Cert. Exh. 1).

4

and yet never advised the Court that a settlement had not been reached. (See Plaintiff's Exhibit C, pp. 1-4).[5]

On June 21, 2012, Defendants provided Plaintiff with a settlement agreement for her review and comment. (Cesaratto Cert. ¶ 7; *see* Plaintiff's Exhibit D, pp. 1-7). The Agreement memorialized all of the material terms agreed to before the Magistrate.

Plaintiff's motion papers show that on July 31, 2012, Plaintiff's former counsel emailed Plaintiff:

> "I am writing to follow up on our telephone conversation yesterday.
>
> I cannot emphasize how serious this situation is. As I have told you, your case is being held open only long enough ***to consummate the settlement that you agreed to in the mediation with Magistrate Judge Francis***. Although I sent you the draft agreement on June 27 and sent you several voicemails explaining that I need to hear back from you sooner rather than later, you apparently did not read the agreement until this past weekend. . . . And ***you now insist that the settlement is not what you agreed to because you will have to pay taxes on the $59,500 that NYPH will pay to you***.
>
> [Y]ou should know that NYPH will not increase the $59,500 that is on the table – ***a sum you agreed to in Court, in front of Magistrate Judge Francis***. In an attempt to address ***your new demand***, I will ask NYPH if it would be willing to pay you the entire amount via 1099 . . . If NYPH does not agree to pay the entire settlement via 1099 and ***you decide you want to repudiate the deal you agreed to***, it may be possible for you to do so and attempt to move forward the litigation. You should be aware, however, ***that you agreed to accept $59,500 in settlement of your claims in Court, in front of Magistrate Judge Francis***. It is entirely possible that NYPH may move to try to enforce the settlement.

(Plaintiff's Exhibit D, pp. 18-19) (emphasis added).

---

[5] The substitution of counsel was accomplished by sealed documents not provided to Defendants.

On August 2, 2011, former counsel wrote to Plaintiff:

> "I spoke with Cesaratto about paying the entire amount via 1099 – he said he did not think NYPH could do that, but would check. In the meantime, he asked me to send him a mark up of the agreement with our suggested changes to the agreement. Tomorrow I will send you the draft that I intend to send to him. . . .
>
> You should talk to an accountant or tax advisor about the implications of having the agreement or any portion thereof, paid via 1099. ***I am not a tax lawyer, but my understanding is that a 1099 payment does not have payroll taxes or withholding taken out, but must still be included in your gross income for the year***. The proposal that I'm currently making to NYPH would be to have the hospital pay a check for $28,500 to my firm for attorneys fees via 1099 – we would then reimburse to you $27,000 for attorneys' fees you have already paid. I'm asking NYPH to pay the remaining $31,000 to you via 1099. Again Cesaratto's initial reaction was that he did not think he could pay all of the $31,000 via 1099. You need to talk to an accountant or tax advisor about the tax consequences of these types of payments." (emphasis added).

(Plaintiff's Exhibit D, p. 17) (emphasis added)..

On August 3, 2012, Plaintiff wrote to former counsel:

> "Question, ***why not request the entire amount as emotional distress***.
>
> That is what I asked."

(Plaintiff's Exhibit D, p. 17) (emphasis added)..

On or about August 22, 2012, in response to Plaintiff's request and in an effort to get the agreement signed, the Hospital agreed to pay the entire settlement amount to Plaintiff's counsel as attorneys for Plaintiff and to issue Forms 1099 to Plaintiff and the Vladeck Firm. (Cesaratto Cert. ¶ 9).

6

On August 15, 2012, Plaintiff's former counsel provided a redline to the Hospital's draft that added a new provision not discussed before the Magistrate, which reintroduced a mischaracterization of the facts: "[t]he Settlement Amount will be paid to Lyman for emotional distress." (Cesaratto Cert. ¶ 8; *see* Plaintiff's Exhibit D, pp. 27-33). Plaintiff has refused to sign any agreement that did not characterize the settlement payment as being for emotional distress injuries despite the fact that there is no evidence of any such injury within the meaning of the Internal Revenue Code.

## ARGUMENT

### POINT I

**PLAINTIFF IS BOUND BY THE MAY 24, 2012 AGREEMENT**

A. **Because Plaintiff And Defendants Made A Deliberate Decision To Settle, Plaintiff Should Not Be Relieved Of Her Settlement.**

Because this case has been closed, Plaintiff's motion may be properly treated as a Rule 60(b) motion. *See Powell*, 497 F. 3d at 128. Rule 60(b) is not a mechanism for a party to effectuate a reconsideration of its litigation strategy. *See Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50, 53 (S.D.N.Y. 1986) (a party's "interest in undoing the results of a litigation strategy which, in hindsight, appears unwise fails to outweigh the judiciary's interest in the finality of judgments.").

Relief from an order of dismissal under Rule 60(b) may be granted only in "extraordinary circumstances." *See Ackermann v. United States*, 340 U.S. 193, 199-202 (1950); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." *Powell*, 497 F. 3d at 128 (citation omitted). "Rule [60(b)] does

7

not allow district courts to 'indulge a party's discontent over the effects of its bargain.'" *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994) (citing *Kozlowski v. Coughlin*, 871 F.2d 241, 246 (2d Cir. 1989)).

Accordingly, the Second Circuit has refused to relieve a Plaintiff from a settlement of Title VII claims in open court but who later sought relief from that agreement where, as here, she appeared with counsel, and assented to the agreement, but subsequently reconsidered in part over concern regarding the tax consequences. *Powell*, 497 F.3d at 129 ("The settlement remains binding even if a party has a change of heart between the time she agreed to the settlement and the time those terms are reduced to writing"). Here, Plaintiff attended the settlement conference and was present when the settlement was announced by her counsel in front of the Magistrate, and the record evidence reflects her full assent and agreement.

**B.   The Parties Reached A Binding Agreement On All Material Terms Before The Magistrate, Which Remains Unaffected By Subsequent Disagreements Over New Terms Sought By Plaintiff Directed To Avoid Her Tax Liabilities.**

The written record here conclusively establishes the existence of a binding agreement, akin to a stipulation entered into in open court. *See, e.g., Powell*, 497 F. 3d at 131 ("the in-court announcement here functioned in a manner akin to that of a memorializing writing"). There is no legitimate dispute that an agreement was reached here. First, there was an Order of Dismissal entered on the record documenting the settlement (this matter "***has been settled***"). Second, Plaintiff acquiesced in the face of notice from the Court that it had been advised that the matter had been settled. Third, through Plaintiff's submission of emails exchanged with her counsel, there were written admissions against interest that an agreement was reached by Plaintiff before the Magistrate. Indeed, in *Powell*, the Court noted an important distinction between a Court Order stating that it having been reported to the Court that this matter "has been settled"

8

suggesting that the matter had already been settled (as is the case here) versus "will be settled" language suggesting that the parties not yet achieved a settlement. *Powell*, 497 F. 3d at 132 - 133; *see also Lee*, 2009 WL 2447700 (rejecting Plaintiff's argument that because she never signed the written agreement, she never agreed to be bound, where she does not deny that an oral agreement was reached with the mediator, the terms were set forth in declaration of the mediator and counsel, and she expressly agreed to those terms).

On this record, the requirements of both New York State and Federal law have been fully satisfied. *See Williamson v. Delsener*, 59 A.D.3d 291, 291-292 (1st Dept. 2009) (emails exchanged between opposing counsel satisfied CPLR § 2104 and indicated that Defendant was aware of and consented to the settlement); *Figueroa v. City of New York*, 2011 WL 309061, 05 Civ. 9594 (S.D.N.Y. Feb. 1, 2011) (the requirements that a settlement agreement either be reduced to writing or stipulated to in open court does not apply to an action based on federal law (here, Title VII), and the parties may enter into an oral settlement agreement) *aff'd*, 475 Fed.Appx. 365 (2d. Cir. 2012) (settlement agreements that do not comply with CPLR § 2104 may be enforced where equity so demands); *Lee*, 2009 WL 2447700, at *2 (Courts have found substantial compliance with CPLR § 2104 where (1) the court entered notice of the settlement in its calendar and computer records, (2) the settlement was reached on the record at a deposition or settlement conference, or (3) the settlement was reached at or following a settlement conference before the court).[6]

---

[6] *See also Lynch, Inc. v. Samatamason, Inc.*, 279 F. 3d 487 (7th Cir. 2002) (court may permissibly rule that a case has been settled on the basis of a settlement discussion that was conducted before the judge but was not recorded or transcribed); *Monaghan v. SZS 33 Assoc.*, 73 F. 2d 1276, 1283 (1996) (oral agreement to settle reached at a settlement conference before the court, but not transcribed, may constitute substantial compliance with CPLR § 2014).

To avoid this clear and convincing evidence of her agreement, Plaintiff's counsel mischaracterizes the discussions at the settlement conference as merely the opening round of negotiations that ultimately proved unsuccessful (see, e.g., Cohn Affirmation, ¶5). The tax related issues were never discussed before the Magistrate as Plaintiff's email exchanges with former counsel demonstrate.[7] Rather, the parties' draft of the agreement reflected all of the material terms agreed to were: (1) monetary settlement amount-$59,500; (2) neutral reference by NYPH in accordance with its policy; (3) mutual non-disparagement by Plaintiff and LaPorta individually; (4) full general release of all Defendants by Plaintiff; (5) Plaintiff's agreement not to reapply to NYPH; and (6) confidentiality, and an agreed to statement, where parties would state if asked about the litigation, only that they "have amicably resolved their differences."

After Plaintiff's "new demand" for Form 1099 treatment, NYPH and her former counsel agreed to have the payment go to counsel for Plaintiff which would be reported on Forms 1099. But that did not satisfy Plaintiff who made an additional demand that her injuries be deemed for emotional distress. The Hospital would not agree to this new demand that lacked factual basis. While the parties never came to an agreement concerning the tax treatment of this matter, Plaintiff's counsel withdrew from the representation apparently because her Firm would not agree to indemnification language regarding Plaintiff's demand for Form 1099 treatment/without withholding. As Plaintiff's emails reveal, Plaintiff was looking to change the deal by insisting on non-taxable emotional distress treatment for the settlement proceeds – when that was not factually accurate. (See Plaintiff's Exhibit D, p. 17). The original deal, however, remained in

---

[7] As Plaintiff's former counsel wrote on July 31, 2012, "In an attempt to address your **new demand** [i.e., you insist that "the settlement is not what you agreed to because you will have to pay taxes on the $59,500 that NYPH will pay to you], I will ask NYPH if it would be willing to pay you the entire settlement via 1099 (which would have no withholding and no payroll taxes taken out." Similarly, Plaintiff wrote on August 3, 2012, "**the request was emotional distress in full**." (Plaintiff's Exhibit D, p. 17).

force, despite the lack of agreement over the newly proposed tax treatment language and irrespective of Plaintiff's failure to sign the settlement agreement. *See Mia v. Potter*, 282 Fed.Appx. 478 (7th Cir. 2008) (the court upheld a valid oral settlement agreement where the plaintiff disagreed with her employer's statement in the written agreement that they would issue an IRS Form 1099 in connection with the settlement even though she never agreed that the payment would be taxable). In *Mia*, the Court held that the inclusion of the Form 1099 statement was not a material term, stating that "whether the payment is taxable is not up to the [Defendant]; if [the Plaintiff] wishes to dispute its taxability, she must do so with the IRS." *Mia*, 282 Fed.Appx. at 479; *see also Tujetsch v. Bradley Dental, LLC*, 2010 WL 5099981, at *2 (N.D. Ill. Dec. 8, 2010) ("[w]hether a settlement payment is taxable, and whether an IRS Form 1099 must be issued, is not subject to the parties discretion, and thus is not material.").

C.   **The Settlement Is Enforceable As There Is No Evidence That Plaintiff Reserved Any Right Not To Be Bound Absent Written Agreement.**

Plaintiff has offered no evidence that the she expressly reserved the right not to be bound in the absence of a written agreement.[8] As the Court was advised, "the matter ***has been*** settled." Following the May 30, 2012 Order, Plaintiff never contacted the Court to advise that she had not, in fact, agreed to settle the matter and the Court had been (in fact) mistakenly advised. After the settlement was reached, the Defendants provided a written agreement accurately memorializing all of the terms. The exchange of drafts between counsel is not considered the equivalent of a reservation of Plaintiff's right not to be bound absent a subsequent writing. *See Winston*, 777 F.

---

[8] Generally, under *Winston v. Mediafare Entertainment Corp.*, 777 F. 2d 78 (2d Cir. 1985), a four-factor test is applied to determine the existent of a binding oral contract: (1) whether there has been an express reservation of the right not to be bound in absence of a writing; (2) whether there has been partial performance of contract; (3) whether all of the terms of the alleged contract have been agreed upon; (4) whether the agreement at issue is the type of contract that is usually committed to writing. *See Ciaramella v. Readers Digest Ass'n*, 131 F.2d 320, 323 (2d Cir. 1997) ("No single factor is decisive, but each provides significant guidance."). The intention of the parties on this issue is a question of fact, to be determined by examination of the totality of the circumstances. *Ciaramella*, 131 F. 3d at 322.

2d at 80 ("freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement"); *Jackson v. NYC Dept. of Ed.*, 2012 WL 1986593, at *3 (enforcing oral settlement agreement where the parties had met for mediation with the Magistrate since "[d]iscussing execution of a formal agreement . . . is not the same as reserving the right not to be bound in the absence of a formal document.").

Plaintiff's counsel is incorrect when he states that there "was a settlement in principle ***subject to the final approval of Plaintiff*** and a written agreement." *See* Affirmation of Frederick Cohn, ¶5 (emphasis added). At the outset, Plaintiff's substituted counsel was not a participant in the settlement negotiations/conference. He has no personal knowledge of what occurred at the conference and thus, to the extent his affirmation is inconsistent with the facts or as documented, it must be disregarded. Plaintiff's contention is belied by the exchange of emails between her and her former counsel who withdrew in the face of Plaintiff's behavior. The record exhibits to her motion, demonstrate that an agreement was reached. Plaintiff only subsequently sought tax treatment language. Thus, there is no question that Plaintiff, who requested the mediation and was an experienced business woman, agreed to a settlement years after her termination, with ample time to consider whether and on what terms to settle. *See Powell*, 497 F. 3d at 132 (upholding oral agreement where Plaintiff, "a former vice president and sophisticated business woman, was represented by counsel when the parties entered settlement, and had nearly two years between her termination and settlement negotiations to give considered thought to how she wished to resolve this dispute.").[9]

---

[9] While settlement of employment claims is typically committed to writing, this agreement was discussed and agreed to in front of the Magistrate Judge, and reflected in the official court record upon entry of the Order.

**D.      The Parties Partially Performed Under The Settlement By Approving the Magistrate's Notification To The District Court And Exchanging Drafts.**

There was partial performance under the agreement as the Court was advised that a settlement had been reached, and Plaintiff never contacted the Court to advise otherwise. The parties, in addition, exchanged drafts setting forth the agreed terms. Thus, there was partial performance of the contract. *See Jackson, 2012 WL 1986593* at *3 (communicating settlement to Court and exchanging drafts is partial performance).

**E.      The OWBA Revocation Period In The Written Agreement Does Not Obviate The Settlement.**

Plaintiff's argument concerning the OWBA revocation period is a red herring. While the written drafts provided for the revocation period required under the ADEA statute to be an effective general release, Plaintiff had already agreed to a full release of all claims in front of the Magistrate. The language in the settlement agreement was merely effectuating her prior agreement as it pertained to the release of all claims, including ADEA claims. *See Eswarappa v. SHED Inc./KID's CLUB*, 685 F. Supp. 2d at 229, 233 (D. Ma. 2010) (inclusion of the ADEA review period language "is not determinative; the plaintiff cannot bootstrap that provision in the oral settlement agreement.").

## CONCLUSION

For all of the foregoing reasons, Defendants the New York and Presbyterian Hospital and LaPorta respectfully urge that Plaintiff's motion be denied and that it be awarded the costs and attorneys' fees of opposing her motion.

Dated: New York, New York
November 21, 2012

                                            Respectfully submitted,

                                            EPSTEIN BECKER & GREEN, P.C.

                                            By:   s/James S. Frank
                                                      James S. Frank
                                                      Brian G. Cesaratto
                                            250 Park Avenue
                                            New York, New York 10177-1211
                                            (212) 351-4500
                                            *Attorneys for Defendants*
                                            *The New York and Presbyterian Hospital and*
                                            *Maria LaPorta*